UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x

WAUSAU BUSINESS INSURANCE CO.,  :

          Plaintiff,               :

      -against-             :

SENTOSA CARE LLC, et al.,     :

         Defendants.       :
-----------------------------------------------------x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 28, 2014
```

10 Civ. 7484 (PAC)

OPINION & ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Wausau Business Insurance Co. ("Wausau" or "Plaintiff") brings this action in diversity against Sentosa Care LLC ("Sentosa"), and the other named defendants[1] (collectively "Defendants") for breach of contract, alleging that Defendants failed to pay outstanding premiums under three separate Workers' Compensation and Employers' Liability policies for the years 2008-09, 2009-10, and 2010-11.

Wausau now moves for summary judgment. Defendants oppose the motion and cross-move for summary judgment. Defendants maintain that (1) there were no contracts between Wausau and any of the Defendants other than Sentosa, because Sentosa is the only one named on the policies; and (2) the contracts are illegal because Defendants were not commonly owned and

---

[1] The other named Defendants in this matter are Brookhaven Rehabilitation & Health Center, LLC; Avalon Gardens Rehabilitation & Health Care Center, LLC; B&B Management LLC; Bay Park Center for Nursing & Rehabilitation, LLC; Bayview Manor LLC; Eastchester Rehabilitation & Health Care Center, LLC; Garden Care Center, Inc.; Golden Gate Rehabilitation & Health Care Center LLC; Nassau Operating Co. LLC; New Surfside Nursing Home, LLC; NMC Acquisition, LLC; North Sea Associates, LLC; Park Avenue Operating Company LLC; Pine Grove Manor II, LLC; Throgs Neck Operating Co. LLC; Townhouse Operating Co. LLC; West Lawrence Care Center, LLC; White Plains Center for Nursing Care LLC; Willoughby Rehabilitation & Health Care Center LLC; Woodmere Rehabilitation & Health Care Center Inc.; Prompt Nursing Employment Agency LLC; Allstate ASO Inc.; Greater New York Home Care, LLC; Stat Portable X-Ray, Inc.; Greater New York Home Care Systems, Inc.; Greater New York Services, Inc.; Little Neck Nursing Home LLC; Franklin Center for Rehabilitation & Nursing, LLC; Split Rock Rehabilitation & Health Care Center, LLC; Fort Tryon Center for Rehabilitation & Nursing, LLC; Congregation Chareidim Corp.; and Economy Exterminating USA LLC. Magna Management LLC was also originally one of the named Defendants, but was voluntarily dismissed from the action on October 29, 2010. (*See* Second Am. Compl. at 13 fn. 1.)

therefore could not be properly combined under the same policies with Sentosa.  Defendants also argue that, even if there were a contract—and the Court determines that there certainly was an insurance contract between the parties—Wausau has failed to establish a prima facie case for the unpaid premiums because Wausau (i) did not submit a full copy of the policies; (ii) did not sufficiently explain how the premiums were calculated; and (iii) failed to authenticate the audits it relied upon for damages, which were created in the course of litigation.  Defendants also move the Court to reconsider its prior order of November 21, 2011 determining that it has diversity jurisdiction over this action.

Wausau argues there is an enforceable contract with Defendants: (1) each Defendant was a party to a policy endorsement; (2) the Defendants were properly combined under the same policy; (3) even if they were not, Defendants never submitted information indicating they could not be combined, as required by the New York Experience Rating Plan Manual, so the contracts cannot be invalidated; and (4) having received the benefits of coverage under the policies for years, Defendants cannot now argue a contract never existed.  Wausau also submits it provided all necessary documentation, authentication, and explanation to support its damages claims.  Wausau urges the Court to reaffirm its prior position regarding diversity jurisdiction.[2]

For the reasons that follow, the Court denies Defendants' motion for reconsideration of the November 21, 2011 Order and motion for summary judgment, and grants Wausau's motion for summary judgment in its entirety.

---

[2] Plaintiff also urges the Court to reject Defendants' motion for summary judgment on the grounds that the Notice of Motion is procedurally defective under Rule 7(b).  The Court declines to do so, since Defendants corrected the clerical errors that Plaintiff cites by refiling the Notice of Motion. (Dkt. 81.)

**BACKGROUND**

**I.  The Parties and Policies**

Wausau is a stock insurance company organized under the laws of Wisconsin, with its primary place of business in Boston, Massachusetts. (Second Am. Compl. ¶1; Def.'s Answer ¶1.) It is undisputed that Wausau issued three Workers' Compensation and Employers' Liability policies to Sentosa.[3]  The first policy, No. WCK-Y91-448515-018 (the "018 Policy"), had a policy period of February 1, 2008 to March 1, 2009.  (Gauthier May Decl. Ex. 1.)  The second policy, No. WCK-Z01-448515-019 (the "019 Policy") had a policy period of March 1, 2009 to March 1, 2010.  (*Id.* Ex. 3.)  The third policy, No. WCK-Z91-448515-010 (the "010 Policy"), had a policy period of March 1, 2010, to March 1, 2011. (*Id.* Ex. 5.)

In each of the three policies, Item 1 lists Sentosa Care LLC as the name of the primary insured.  (Gauthier May Decl. Ex. 1 WAU 010000, Ex. 3 WAU 010533, Ex. 5 WAU 011096.) The section below Item 1 entitled "Coverage" states "This policy includes these endorsements and schedules:  See Item 3. Coverage D - Extension of Information Page." (*Id.*)  Item 3 modifies Item 1, stating "Change in Item 1 of the Information Page Endorsement (Add Insureds)." (*Id.* Ex. 1 WAU 010002; Ex. 3 WAU 010535; Ex. 5 WAU 011098.)  The form referenced in that section is entitled "Change in Item 1 of the Information Page Endorsement (Add Insureds)," and it lists the names of additional insured entities for each policy.  (*Id.* Ex. 1 WAU 010028-29; Ex. 3 WAU 010598-99; Ex. 5 WAU 011140-41.)  Additional insureds' names are also listed on separate endorsements and schedules incorporated by reference.  (*See, e.g.*, *id.* Ex. 1 WAU 010094 ("Policy Information Page Endorsement" adding "Insured's Name"); Ex. 3 WAU 010595 ("Named Insured Link Schedule").)

---

[3] Defendants admit the existence of these policies, but dispute the application of their terms to the named Defendants other than Sentosa. (*See* Def's Response to Pl.'s Rule 56.1 Stmt.  ¶¶ 12, 18, 48, 49, 79, 81, 115.)

Specifically, the 018 Policy endorsements list the following additional entities— Defendants in this action—as insureds:  Brookhaven Rehabilitation & Health Center, LLC; Avalon Gardens Rehabilitation & Health Care Center, LLC; B&B Management LLC; Bay Park Center for Nursing & Rehabilitation, LLC; Bayview Manor LLC[4]; Eastchester Rehabilitation & Health Care Center, LLC; Garden Care Center, Inc.; Golden Gate Rehabilitation & Health Care Center LLC; Nassau Operating Co. LLC; New Surfside Nursing Home, LLC; NMC Acquisition, LLC; North Sea Associates, LLC; Park Avenue Operating Company LLC; Pine Grove Manor II, LLC; Throgs Neck Operating Co. LLC; Townhouse Operating Co. LLC; West Lawrence Care Center, LLC; White Plains Center for Nursing Care LLC; Willoughby Rehabilitation & Health Care Center LLC; Woodmere Rehabilitation & Health Care Center Inc.; Allstate ASO Inc.; Greater New York Home Care, LLC; Stat Portable X-Ray, Inc.; Little Neck Nursing Home LLC; Franklin Center for Rehabilitation & Nursing, LLC; Split Rock Rehabilitation & Health Care Center, LLC; and Fort Tryon Center for Rehabilitation & Nursing, LLC (collectively, with Sentosa, the "018 Policy Defendants").  (Gauthier May Decl. Ex. 1 WAU 010028-29, WAU 010094, WAU 010177, WAU 010268, WAU 010332.)

The 019 Policy endorsements and schedules list as insureds all of the 018 Policy Defendants, plus the following entities, also Defendants in this action:  Prompt Nursing Employment Agency, LLC; Greater New York Home Care Systems, Inc.; Greater New York Services, Inc.; Congregation Chareidim Corp.; and Economy Exterminating USA LLC (the insureds covered by the 019 Policy are hereinafter the "019 Policy Defendants"). (*Id.* Ex. 3 WAU 010595-99, WAU 010702, WAU 010898, WAU 010963.)

---

[4] Bayview Manor LLC was formerly known as Bayview Nursing and Rehabilitation Center Inc. (Gauthier Aug. Decl. ¶ 3A.)

The 010 Policy endorsements and schedules list as insureds all of the 019 Policy Defendants, except for Franklin Center for Rehabilitation & Nursing, LLC; Split Rock Rehabilitation & Health Care Center, LLC; and Fort Tryon Center for Rehabilitation & Nursing, LLC (the insureds covered by the 010 Policy are hereinafter the "010 Policy Defendants"). (*Id.* Ex. 5 WAU 011140-42.)

In addition to adding insureds to each policy, Item 3 refers to policy schedules under "Item 4.  Premium – Extension of Information Page." (Gauthier May Decl. at Ex. 1 WAU 010002; Ex. 3 WAU 010535; Ex. 5 WAU 011098.)  Item 4 lists information about the additional insureds covered under each policy—the same entities listed above.  This information includes classification of each additional insured's operations, the insured's class code, the premium basis (which defaults to payroll unless otherwise indicated), applicable rate, and the estimated premium. (*See, e.g.*, *id.* Ex. 1 WAU 010004.)  The 018 Policy contains this information about the 018 Policy Defendants (*id.* Ex. 1 WAU 010004-23); the 019 Policy contains this information about the 019 Policy Defendants (*id.* Ex. 1 WAU 010538-92); and the 010 Policy contains this information about the 010 Policy Defendants (*id.* Ex. 1 WAU 011100-134).

The 018 Policy was signed by Nachie Blumenfrucht (*id.* Ex. 2.), the accountant for Allstate ASO (Blumenfrucht Decl. ¶ 1).  Both the 019 Policy and the 010 Policy were signed by Sam Schlesinger. (*Id.* Ex. 4, Ex. 6.)  Sam Schlesinger is the President and 100% owner of Allstate ASO.  (Schlesinger July Decl. ¶ 1.)  The signature page of the 019 Policy states, "In witness whereof, the parties have caused this Master Agreement to be executed by their respective representatives thereunto duly authorized . . . ." (Gauthier May Decl. Ex. 4 WAU768).  Sam Schlesinger's name appears below the name of the party "Sentosa Care LLC." (*Id.)*  The

signature page of the 010 Policy states, "You, by signature of your qualified officer, agree to abide by the terms and conditions of this endorsement." (*Id.* Ex. 6 WAU752.)

The parties dispute whether the Allstate ASO representatives signed on behalf of the Defendants listed on the policies, and whether they had authority to do so.[5]  Defendants admit, however, that Allstate ASO managed the insurance programs for all of the named Defendants, except for Congregation Chareidim Corp., Stat Portable X-Ray Inc., and Economy Exterminating USA LLC. (Schlesinger July Decl. ¶ 2.)  Contrary to Allstate ASO's disclaiming representation of these other Defendants, however, Schlesinger admits later in his affidavit that the Workers' Compensation Risk Manager for Allstate ASO, Dana Micklos, was the one who informed Wausau that Economy Exterminating USA LLC wanted coverage under the 010 Policy. (*Id.* ¶ 27.)

## II.  The Policy Premiums

Each of the three policies contain a Large Risk Alternative Rating Option ("LRARO"), under which Wausau calculates each insured's premium obligations using a retrospective rating formula.  This formula, unless otherwise specified, is based upon the insureds' payroll during the policy period, and the classification of each employee's employment.  (Gauthier May Decl. Ex. 1 WAU 010004, Ex. 2 WAU 778-80, Ex. 4 WAU763-768, Ex. 6 WAU753-756.)  Each policy specifies that the retrospective premium will be determined for all insureds combined, not separately for each insured. (*Id.* Ex. 2 WAU 778-80, Ex. 4 WAU763-768, Ex. 6 WAU753-756.) Each policy also defines other costs for which the insureds are responsible, including, *inter alia*, taxes and "incurred losses" (such as interest on judgments, expenses to recover against third

---

[5] Defendants submit the affidavits of the Allstate ASO representatives who signed the policies, who state that they were never authorized by the Defendants to bind the Defendants jointly and severally under the policies. (Blumenfrucht Decl. ¶¶ 1-4; Schlesinger July Decl. ¶¶ 3-4.)  As discussed below, Defendants also submit affidavits to show that the entities were not commonly owned.

parties, and losses allocable to individual workers' compensation claims and their associated legal fees). (*Id.*) In this way, the experience of each insured—the workers' compensation claims that each insured's employees submit—affect the amount that the combined insureds must pay as premium. The same section defining these costs explains how each cost is calculated.[6] (*Id.*; *see generally* Pl.'s Rule 56.1 Stmt.)

Wausau collects payroll information of each insured by conducting a final audit of the insured after each policy period. (Gauthier May Decl. Ex. 9, Ex. 16, Ex. 22.) Under the terms of each policy, it is the insured's responsibility to (1) keep records of information needed to compute premium; (2) provide Wausau with the records upon Wausau's request; and (3) let Wausau examine and audit all of the records that relate to each policy. (Martens Decl. ¶ 20; Gauthier May Decl. Ex. 1 WAU 010065, Ex. 3 WAU 010689, Ex. 5 WAU 011176.) If an insured does not provide complete records, Wausau's auditor conducts its final audit as accurately as possible based on the information provided. (Martens Decl. ¶ 20.) Wausau adjusts the premiums based on these audits. (*Id.*) Premiums are also adjusted (recalculated) annually to take into account insureds' incurred losses. (*Id.* Ex. 2, Ex. 4, Ex. 6; *see* Pl.'s Rule 56.1 Stmt. ¶¶ 9, 125.) If the retrospective premium increases or decreases between adjustments, Wausau issues either higher bills or credits, respectively, to the insured. (Gauthier May Decl. Ex. 2, Ex. 4, Ex. 6; *see* Pl.'s Rule 56.1 Stmt. ¶¶ 11, 12, 56, 57, 125.)

The LRARO plan for the 018 Policy and the 019 Policy provides that "Each insured is responsible for the payment of all standard premium and retrospective premium calculated under

---

[6] Defendants admit the definitions of incurred losses (Def.'s Response to Pl.'s Rule 56.1 Stmt. ¶¶ 4, 44), basic premium and taxes (*Id.* ¶¶ 5, 45-46), factors for minimum and maximum premiums and New York Assessment, and the components of the New York Surcharge (*Id.* ¶¶ 50-52.) Defendants also admit the formulas for calculating retrospective premium under the 019 Policy (*Id.* ¶¶ 43, 118-119).

this endorsement." (Gauthier May Decl. Ex. 2 WAU 780, Ex. 4 WAU 766.)  Similarly, the

LRARO plan for the 010 Policy states

> After each calculation of retrospective premium, you will promptly
> pay the amount due us, or we will refund the amount due you.
> Each Named Insured covered under the policy(ies) listed in the
> Schedule is jointly and severally liable for all premiums due under
> this rating agreement, and for any other financial obligations of
> any Named Insured to us arising out of any agreements contained
> in the policy(ies) listed in the Schedule.

(*Id.* Ex. 6 WAU 755.)

## III.  Receipt of Benefits Under the Policies

The coverage form in each policy obligates Wausau to pay the benefits required of the

insured by the workers' compensation law, and to defend suits brought by workers against the

insured for payable benefits. (*See* Gauthier Aug. Decl. Ex. 2.)  There is no dispute that

Defendants received the benefits of coverage under the policies.  The retrospective adjustments

for each of the policies include "Loss Runs," which set forth information on each of the claims

handled under the policies.  This information includes the claimant's name, the claim number,

the date of the accident in question, the facility where the accident occurred, the type of the

accident, and the reserves and actual amount paid on each claim.  (*See, e.g.,* Gauthier Aug. Decl.

Exs. 8-11.)  The record reflects that as of September 1, 2011, Wausau handled 153 claims under

the 018 Policy made against the 018 Policy Defendants  (*id.*); 113 claims under the 019 Policy

made against the 019 Policy Defendants  (*id.* Exs. 12-14);  and 32 claims under the 010 Policy

made against the 010 Policy Defendants (*id.* Exs. 15-17).

These undisputed records demonstrate that Defendants claimed and received the benefits

of the Wausau insurance policies.  The Defendants at various places in the record also admit that

they were, in fact, insured by Wausau.  (*See* Landau First Decl. ¶ 2; Landau Second Decl. ¶ 5;

Bent Philipson Decl. ¶ 11; Deborah Phillipson Decl. ¶ 10; Schlesinger July Decl. ¶¶ 3, 20.)

Defendants do not submit any evidence indicating that they did not want the benefits of the

policies, or did not accept coverage.

Defendants further admit the parties' obligations as to the dates of premium calculation

and payment.  (Def.'s Resp. to Pl.'s 56.1 Stmt. ¶¶ 8-12, 53-57, 122-130.)  They also admit the

issuance and valuation dates of various invoices and retrospective premium adjustments.  (*Id.* ¶¶

18-19, 28-29, 79-82, 88-90, 138-139, 149-150, 171.)

## IV.  Defendants' Failure to Pay Balances Under the Policies

Wausau claims damages based on premiums, assessments, and surcharges Defendants

owe Wausau under the policies.  Defendants made initial payments under each of the policies

(*see* Gauthier May Decl. ¶ 25 (admitting the 018 Policy Defendants paid $5,340,782 under the

018 Policy), ¶ 69 (admitting the 019 Policy Defendants paid $3,437,101 under the 019 Policy), ¶

122 (admitting the 010 Policy Defendants paid approximately $1,031,729 under the 010 Policy)).

The dispute here centers on Defendants' refusal to pay retrospective premiums, assessments, and

surcharges under each of the policies, as described below.

Pursuant to the 018 Policy, Wausau completed an audit of the 018 Policy Defendants'

payroll on January 5, 2010.[7]  On October 11, 2010, Wausau issued the Second Retrospective

Premium Adjustment invoice for the 018 Policy. (Pl.'s Rule 56.1 Stmt. ¶ 18.)  After applying the

ratings formula specified in the 018 Policy, Wausau calculated the additional premium and

assessment due under the 018 Policy second adjustment to be $1,498,955.[8] (*Id.* ¶ 26; Gauthier

---

[7] Defendants deny this statement in conclusory fashion in their response to Plaintiff's Rule 56.1 Statement, generally
referring the court to deposition testimony of Wausau's witness, auditor Joanne Martens.  Nothing in that deposition
transcript raises a genuine dispute as to the fact that the audit was conducted.

[8] Defendants similarly deny this amount and the others in this section in conclusory fashion, citing generally,
without any paragraph or page numbers, to their declarations.  Nothing in these declarations raises a genuine dispute

May Decl. ¶ 25, Ex. 7)  On October 6, 2011, Wausau issued the Third Retrospective Premium

Adjustment invoice for the 018 Policy, which was based on a September 1, 2011 adjustment

date, and calculated the additional premium and assessment due to be $250,372. (Pl.'s Rule 56.1

Stmt. ¶ 38; Gauthier May Decl. ¶ 36, Ex. 8.)

Wausau issued an estimated audit to the 019 Policy Defendants on June 18, 2010. (Pl.'s

Rule 56.1 Stmt. ¶ 58; Gauthier May Decl. Ex. 9.)  Based upon the estimated audit summary

invoice, and after applying all credits, Wausau calculated that the 019 Policy Defendants owed

$1,466,621. (Pl.'s Rule 56.1 Stmt. ¶ 86; Gauthier May Decl. Ex. 14.)  Wausau claims it

attempted to conduct an actual audit of the 019 Policy Defendants, but was frustrated by

Defendants' refusal to provide their payroll records, tax returns, ledgers, and other records.  (Am.

Compl. ¶¶ 64-67, 86-88; Second Am. Compl. ¶ 114.)  On June 16, 2011, and September 15,

2011, the Court directed Defendants to produce the records they had withheld from discovery.

(*See* Dkt. Minute Entries.)  On or about November 15, 2011, Wausau issued the actual audit

results of its Second Retrospective Premium Adjustment to the 019 Policy Defendants.  (Pl.'s

Rule 56.1 Stmt. ¶ 108.)  Wausau calculated that the net balance due for the 019 Second

Adjustment, above and beyond the outstanding balance due as a result of the 019 First

Adjustment, was $2,654,571. (*Id.* ¶ 113; Gauthier May Decl. ¶ 99, Ex. 17.)

On September 8, 2010, Wausau issued its First Retrospective Premium Adjustment

invoice for the 010 Policy. (Pl.'s Rule 56.1 Stmt. ¶ 138.)  Wausau calculated that, after taking

into account all credits from the first adjustment, the 010 Policy Defendants owed a total balance

of $252,950.80. (*Id.* ¶ 147; Gauthier May Decl. ¶ 123, Ex. 20.)  On or about October 5, 2011,

Wausau issued its Second Retrospective Premium Adjustment for the 010 Policy, calculating

---

that Wausau calculated the amounts as stated.  The Court addresses the issues that Defendants raise as to the
accuracy of these amounts in this Opinion and Order, *infra*.

that the 010 Policy Defendants owed a total net balance of $694,117. (Pl.'s Rule 56.1 Stmt. ¶ 165; Gauthier May Decl. ¶ 138, Ex. 21.)  This balance was based on an estimated audit (Pl.'s Rule 56.1 Stmt. ¶ 151), because Defendants refused to produce the necessary records, as described above.  After the Court directed production, on or about November 15, 2011, Wausau issued an actual audit report of the 010 Policy Defendants (Pl.'s Rule 56.1 Stmt. ¶ 151; Gauthier May Decl. ¶ 141, Ex. 22.)  After taking credits into account, Wausau calculated that the 010 Policy Defendants owed Wausau a total net balance of $598,864 (Pl.'s Rule 56.1 Stmt. ¶ 176; Gauthier May Decl. ¶ 154, Ex. 23.)

Based on these above adjustments, Wausau claims damages of: (1) $1,749,327 plus interest from the 018 Policy Defendants; (2) $4,121,192 plus interest from the 019 Policy Defendants; and (3) $851,814.80 plus interest from the 010 Policy Defendants.  There is no evidence that Defendants ever paid these balances.[9]

## V.  Policy Forms and Endorsements Issued by the New York Compensation Insurance Rating Board

Each of the policies also include certain forms and endorsements issued by the New York Compensation Insurance Rating Board (the "Rating Board").  Copies of these forms are contained in the Workers' Compensation and Employers' Liability Manual ("WCEL Manual"). Each policy includes coverage form No. WC 99 00 44 (the "Coverage Form"). (Gauthier Aug. Decl. ¶ 8.)  Part V of the coverage form, entitled "Premium," provides in relevant part, "All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications."  (Gauthier Aug. Decl. Ex. 2.)  Another endorsement form in each policy, entitled

---

[9] Defendants argue in a conclusory manner in their papers, without any citation to the record, that "Defendants have paid in excess of $10,000,000 premiums to Wauasu [sic]." (Def.'s Reply Br. at 1.)  Since the issue is whether Defendants paid the retrospective premiums, Defendants' payment of the standard premiums is irrelevant, except that payment does demonstrate that there is a contract between the parties.

Premium Due Date Endorsement, provides in relevant part, "You will pay all premium when due

. . . . The due date for audit and retrospective premiums is the date of the billing." (Gauthier Aug.

Decl. Ex. 4.)

Each policy also includes Endorsement form No. WC 00 04 14, entitled Notification of

Change in Ownership Endorsement (the "Ownership Endorsement").  The Ownership

Endorsement, also issued by the Rating Board and set forth in the WCEL Manual, provides:

> Experience rating is mandatory for all eligible insureds.  <u>The experience rating modification factor, if any, applicable to this policy, may change if there is a change in your ownership or in that of one or more of the entities eligible to be combined with you for experience rating purposes.</u>  Change in ownership includes sales, purchases, other transfers, mergers, consolidations, dissolutions, formations of a new entity and other  changes provided for in the applicable experience rating plan manual.
>
> <u>You must report any change in ownership to us in writing within 90 days of such change.</u>  Failure to report such changes within this period may result in revision of the experience rating modification factor used to determine your premium rate.

(Gauthier Aug. Decl. Ex. 3.) (emphasis added)

## VI.  The Dispute About Common Ownership

The parties dispute whether Defendants were commonly owned, and thus whether they

could be properly combined under the same workers' compensation policies.  Defendants submit

many affidavits stating that they were not commonly owned.  (*See generally* Landa Decl.; Bent

Philipson Decl.; Deborah Philipson Decl.; Schlesinger July Decl.)  Defendants also point to

emails of Wausau employees to show that Wausau did not have a good-faith belief that the

entities were commonly owned.  In one such email, Andrew Montagna, a Wausau account

executive, discussed common control of the companies based on religious affiliation.

(Schlesinger July Decl. Ex. B.)  In another email, Montagna responded to a Liberty[10] (Wausau) underwriter who questioned the common ownership between Sentosa and Economy Exterminating LLC: "With the increased regulations on the access to proper chemicals needed [Sentosa] felt it would serve them best to get a license so they could do [exterminating] with their own staff and not have issues with the state."  (Schlesinger July Decl. Ex. C.)  Defendants argue that Wausau concocted these stories to justify combining the entities.

Wausau counters that there was common ownership among the entities when the policies were first signed, and Wausau issued the policies based on the ownership information it received when Defendants applied for the policies. (Gauthier Aug Decl. ¶ 74.)  Wausau argues that Defendants' evidence does not show that there was no common ownership at the time the policies were signed; if anything, the evidence shows that Defendants failed to inform Wausau of subsequent ownership transfers that occurred during the policy term. (*See, e.g.*, Pl.'s Opp. Mem. at 15, citing Bent Philipson Decl. Exs. C-F.)

The parties do not dispute, however, that no ownership changes were ever reported to Wausau. (*See* Gauthier Aug. Decl. ¶ 43.)  There is no evidence that the Defendants ever submitted forms showing a lack of common ownership to Wausau or the Rating Board, either when they first applied for coverage under the policies or subsequently.  Defendants also admit that they did not believe that the policies were "illegal" based on lack of common ownership until the litigation of this action. (Def.'s Rule 56.1 Stmt. ¶ 30.)

The record contains only one incident regarding an ownership form.  Shortly before issuing the 010 Policy on March 1, 2010, Wausau requested that Schlesinger fill out an "ERM-14 form," which contains information about an insureds' ownership and ability to be combined with other insureds under a single policy. (Pl.'s Response to Def.'s Rule 56.1 Stmt. ¶ 21.)

---

[10] Wausau is a subsidiary of Liberty Mutual. (Gauthier Reply Decl. Ex. 2.)

Wausau followed up again on or about April 29, 2010, and gave the form to Schlesinger, but Schlesinger refused to return it.[11] (*Id.* ¶ 23.)  It is undisputed that after Schlesinger refused to return the form, Wausau cancelled the policy, on May 4, 2010. (*Id.* ¶ 24; Schlesinger July Decl. Ex. A.)  The cancellation was prospective, cancelling the 010 Policy from June 11, 2010 onward. (Schlesinger July Decl. Ex. A.)  The cancellation did not rescind past coverage. (*Id.*)

## DISCUSSION

### I.  Legal Standard

"Summary judgment is appropriate when, construing the evidence in the light most favorable to the non-moving party, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).  A fact is material only if it "might affect the outcome of the suit under the governing law," and a factual dispute is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Nonetheless, "summary judgment is improper when the court merely believes that the opposing party is unlikely to prevail on the merits after trial."  *Am. Int'l Grp., Inc. v. London Am. Int'l Corp. Ltd.*, 664 F.2d 348, 351 (2d Cir. 1981).

The moving party bears the initial burden of producing evidence on each material element of its claim or defense demonstrating that it is entitled to relief.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The evidence on each material element must be sufficient to entitle the movant to relief as a matter of law.  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

---

[11] Defendants claim that Schlesinger refused to sign the ERM-14 form because Wausau had filled it out with false information, indicating the ownership was "Philipson/Landa 51% 49% LLP'S [sic]." (Schlesinger July Decl. ¶¶ 22-23.)  Plaintiff denies this. (Pl.'s Response to Def.'s Rule 56.1 Stmt. ¶ 22.)

Once the moving party has made an initial showing that no genuine dispute of material fact remains, the nonmoving party may not refute this showing solely by means of "[c]onclusory allegations, conjecture, and speculation," *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003), but must instead present specific evidence in support of its contention that there is a genuine dispute as to material facts.  Fed. R. Civ. P. 56(c).  The Court resolves all ambiguities and draws all factual inferences in favor of the nonmovant, but "only if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II.  Analysis

### 1.  Subject Matter Jurisdiction

Defendants urge the Court to reconsider its prior order of November 21, 2011, which held that the Court has diversity jurisdiction over this action.  The Order provides that the Court would reconsider its decision, if Defendants proffered evidence showing that members of the Defendant LLCs were domiciled in Wisconsin (Wausau's state of incorporation) or Massachusetts (Wausau's principal place of business).  Defendants have failed to do so.  Instead, Defendants rehash their prior arguments, which the Court has already considered and rejected.  For the reasons already articulated in the November 21, 2011 order, the Court has jurisdiction over this action.  Defendants' motion to reconsider the Court's prior order is denied.

### 2.  Wausau's Breach of Contract Claim

The essential elements of a breach of contract claim are "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui,* 91 F.3d 337, 348 (2d Cir. 1996). Defendants' opposition and cross-motion for summary judgment fail to raise a genuine dispute of material fact as to any of these elements.  (1)  The three Workers' Compensation and

Employers' Liability policies at issue were valid and enforceable agreements between Wausau and the Defendants; (2) Wausau covered hundreds of claims on behalf of the Defendants pursuant to the terms of the policies; (3) Defendants paid initial premiums but failed to pay the balances owed under the retrospective terms of the policies; and (4) Wausau has established these unpaid balances as damages, based on audits of Defendants' payroll, and proper calculations of premiums and additional applicable charges.

### A.  Existence of a Contract

Wausau has established the first element: the existence of an agreement.  Item 1 of each policy lists Sentosa Care LLC as the name of the primary insured, but Item 3 modifies Item 1 to incorporate by reference the names of the additional insureds for each of their respective policies.  *See Colonia Ins., A.G. v. D.B.G. Prop. Corp.*, 1993 WL 100221 (S.D.N.Y. Mar. 29, 1993) (holding the defendants listed on endorsement schedules jointly and severally liable for retrospective premiums); *see also Home Indem. Co. v. Castel Constr., Inc.,* 492 N.Y.S.2d 353, 355 (Sup. Ct. 1985) (holding defendant liable for full amount of premiums because it was named insured on policy and received benefits under policy).  The policies also contain Defendants' federal employment identification numbers, classification of their type of business, and other specific information about each Defendant.  The record reflects specific workers' compensation claims information for the Defendants.  There is no dispute that Wausau received this information from the Defendants in connection with their obtaining coverage under the policies. The fact that Defendants paid premiums under each policy, but contest only the retrospective terms, further supports the existence of a contract.  Finally, Wausau's audits of the Defendants makes this conclusion inescapable.

There is no evidence in the record that the Defendants disputed the coverage that they received under these policies (that is, until after the bills came due).  Defendants admit at many places in the record that they were insured under the policies.  (*See* Landau First Decl. ¶ 2; Landau Second Decl. ¶ 5; Bent Philipson Decl. ¶ 11; Deborah Phillipson Decl. ¶ 10; Schlesinger July Decl. ¶ 3, 20).  Defendants paid initial premiums on each of the policies, indicating their assent to each contract.  Furthermore, Defendants received the full benefits of the contracts.  The record reflects that Wausau handled hundreds of claims on the Defendants' behalf.  Under these circumstances, Defendants cannot deny that they were parties to the policies.  *See Hartford Acc. & Indem. Co. v. Coastal Dry Dock & Repair Corp.*, 97 A.D.2d 724, 726 (1st Dep't 1983) ("The insured is bound by the terms of a compensation policy which he accepted and under which he filed claims for workermen's [sic] compensation in favor of employees during the year . . . and raised no objection to its terms and provisions until after demand was made for the balance due on premium.") (internal citations omitted); *see also Home Indem. Co.*, 492 N.Y.S.2d at 355.

Wausau has therefore established that the 018, 019, and 010 policies were valid, binding agreements with Defendants.[12]

## B.  Legality of the Contract: the Common Ownership Dispute

Defendants' main argument is that even if the Defendants were parties to the policies, the policies should not be enforced because they combine multiple entities that are not commonly owned, and are hence illegal.  This argument is based on two manuals issued by the New York Compensation Insurance Rating Board (the "Rating Board"), which the parties agree cover the

---

[12] In light of this analysis, whether the Allstate ASO representatives had authority to sign on behalf of the Defendants other than Sentosa is immaterial.  Even on this point, however, Defendants admit that Allstate ASO managed the insurance programs for all but three of the named Defendants (Schlesinger July Decl. ¶ 2.), and Allstate ASO was the one to notify Wausau that at least one of those three Defendants, Economy Exterminating USA LLC, wanted to join the policy (*Id.* ¶ 27).  In light of these admissions, it is difficult to see how a reasonable juror could conclude Allstate ASO did not have the authority to sign for the Defendants.

policies at issue:  the Workers' Compensation Employment Liability Manual ("WCEL Manual")

and the New York Experience Rating Plan Manual ("Experience Rating Manual"). (Def.'s Mem.

of Law in Support of SJ at 8-11; Pl.'s Opp. Mem. at 8.)

Rule 3(B) of the WCEL Manual states that "Separate legal entities may be insured in one

policy only if the same person, or group of persons, owns the majority interest in such entities."

WCEL Manual (October 1, 2008), Rule 3(B).  Rule 3(B) of the WCEL Manual specifically

refers to the Experience Rating Manual for further clarification. (*Id.*)  The Experience Rating

Manual states:

> The Combination of Two or More Entities requires common
> majority ownership.   Combination requires that: [1] The same
> person, group of persons, or corporation owns more than 50% of
> each entity, or [2] an entity owns a majority interest in another
> entity, which in turn owns a majority interest in another entity.  All
> entities are combinable for experience rating purposes regardless
> of the number of entities involved.

(Experience Rating Manual (2006), Rule 3(D)(1).)

Defendants argue that they were not commonly owned or controlled, either at the

inception of the policies or afterward, and therefore the contract is illegal.  Defendants, however,

do not cite any case law holding that a policy combining multiple insureds that do not share

common majority ownership is "illegal."  The Experience Rating Manual directly refutes this

notion.

The Experience Rating Manual provides specific remedies when insureds are improperly

combined in a single policy.  The same rule of the Experience Rating Manual that defines

common majority ownership as a condition for combination states:

> Regardless of intent, any action that results in the miscalculation or
> misapplication of an experience rating modification determined in
> accordance with this Plan is prohibited.  These actions include, but
> are not limited to: Failure to report changes in ownership according

to Endorsement WC 00 04 14[;] a change in ownership[;] a change
in combinability status . . . .

(Experience Rating Manual (2006), Rule 3(F)(1).)  The Experience Rating Manual proceeds to

describe, in a section titled "Rating Board Response," the remedies that apply when entities have

been combined that do not share common ownership:

> [T]he Rating Board may obtain any information that indicates
> evasion or improper calculation or application of experience rating
> modifications due to actions included, but not limited to, those
> listed in Rule 3(F)(1).  The Rating Board will act to ensure the
> proper calculation and application of all current and preceding
> experience rating modifications impacted by these actions.  <u>This
> includes, but is not limited to the:  Combination of experience that
> would otherwise not be combinable according to Rules 3-D and 3-
> E-1 . . . [and] [c]ontinuation of experience that would otherwise be
> excluded according to Rules 3-E-1 and 3-E-2 [explaining
> experience rating of combined entities].</u>

(Experience Rating Manual (2006), Rule 3(F)(2).) (emphasis added)

The Experience Rating Manual reveals that, while it may not be "authorized," it is not

illegal to combine entities that do not have common ownership; in fact, it is one of the remedies

that the Rating Board specifically recommends for a failure to submit common ownership

information.  Since the policies are not illegal, Defendants' reason not to enforce them is

meritless.

Furthermore, as the Experience Rating Manual suggests in a section entitled "Evasion of

the Experience Rating Modification," typically it is *employers* who will want to be combined

under a single workers' compensation policy, even when they do not have common ownership.

This is because combining entities that employ fewer workers who file claims can decrease the

overall experience rating applied to the entity with which it is combined, lowering premiums.  As

such, the Experience Rating Manual places the burden on *employers* to submit to insurance

carriers any changes in ownership or combinability status.  The Experience Rating Manual, Rule 3(A) states "changes in ownership and/or combinability status must be reported <u>by the employer to its carrier(s)</u> within 90 days of the date of the change." (Emphasis added.)  This language is also included in the Ownership Endorsement, which is part of each contract between Wausau and the Defendants.

It is undisputed that Defendants never submitted an Ownership Endorsement form, an ERM-14 form, or any other written notification indicating lack of common ownership, either to Wausau or to the Rating Board, at any time.  The only incident involving an ERM-14 form occurred when Wausau specifically requested one from Defendants for the 010 Policy.  The Defendants did not fill it out, and Wausau cancelled the policy prospectively, allowing it to continue for three months (presumably to allow Defendants to find coverage elsewhere).  There is no evidence that during those three months Defendants objected to their continued coverage under the policy.

Defendants received the benefits of the policies for almost three years, did not pay the full premiums, and admit that they did not decide the policies were "illegal" until the pendency of Wausau's litigation to collect the premiums due and owing.  In other words, having already received years of benefits, Defendants now seek to invalidate the contract based on a reason they admit they did not concoct until litigation began.  The Court denies Defendants' request to rescind the contract on these grounds.[13]

---

[13] Even assuming *arguendo* that the policies were illegal, rescinding the policies would not be appropriate.  *See Dornberger v. Metropolitan Life Insurance*, 961 F. Supp. 506, 534 (S.D.N.Y. 1997) ("Where contracts which violate statutory provisions are merely *malum prohibitum*, the general rule [that illegal contracts are unenforceable] does not always apply.  If the statute does not provide expressly that its violation will deprive the parties of their right to sue on the contract, and the denial of relief is wholly out of proportion to the requirements of public policy or appropriate individual punishment, the right [to enforce the contract] will not be denied.") (quoting *John E. Rosasco Creameries, Inc. v. Cohen*, 276 N.Y. 274 (1937)) Rescission is especially improper where, as here, workers who need coverage have submitted claims under the policies, and each employer was required by law to be covered under a workers' compensation policy.  *See Stein v. Security Mut. Ins. Co.*, 38 A.D.3d 977, 978-979 (3d Dep't

While Defendants contest whether they were commonly owned,[14] the answer is immaterial.  The contracts are enforceable.

### C.  Wausau's Performance of the Contract

Defendants do not dispute that Wausau fully performed under the contracts. (*See* Def.'s Reply Br. at 1 "Wausau claims 'defendants argue that Wausau has not fully performed.' No such argument was proffered . . . .")  There is overwhelming evidence in the record that Wausau performed its obligations under the three policies, covering hundreds of claims on behalf of the Defendants.  Wausau has thus established this second element of its breach of contract claim.

### D.  Defendants' Breach of Contract

Wausau has shown, and Defendants do not dispute, that Defendants never paid the balances under the 018, 019, and 010 policies that Wausau claims as damages.  Wausau has established the third element of its breach of contract claim.

### E.  Damages

To collect damages for insureds' failure to pay insurance premiums, an insurer must offer evidence: "(1) showing that the policy was issued to the insured; and (2) illustrating the computation of the earned premium established through an audit of the insured's books and records after the expiration of the policy period."  *See Liberty Mut. Ins. Co. v. Thalle Constr. Co.*, 116 F. Supp. 2d 495, 500 (S.D.N.Y. 2000).  After the plaintiff has established this prima facie case, "the burden shifts to the insured to demonstrate that it did not receive the benefits

---

2005)(stating that, in contrast to homeowners' policies, workers' compensation policies cannot be rescinded because the right has been supplanted by statute); *see also Matter of Cruz v. New Millennium Constr. & Restoration Corp.*, 17 A.D.3d 19, 22 (3d Dep't 2005).

[14] Defendants submit multiple affidavits to this effect (see Background, Section VI *supra*).  Plaintiff replies that it believed the Defendants were commonly owned (*see, e.g.*, Benhaim Decl. Ex. A, email from Andrew Montagna to Wausau underwriters, "The ownership of the entities is common to the company SentosaCare . . ."); the affidavits and record evidence do not establish a lack of common ownership at the inception of the policies; and Defendants admit that at least a number of the joint entities were commonly owned. (Def.'s Rule 56.1 Stmt. ¶ 3.)

owed to it under the insurance policy." (*Id.*)[15]  As discussed above, it is clear that Wausau issued three policies to Defendants, and that Defendants enjoyed the benefits of the policies.  In a last feeble attempt to avoid paying for the benefits they received under the policies, Defendants argue that Wausau cannot recover the unpaid premiums because Wausau (i) did not submit a full copy of the policies; (ii) did not sufficiently explain how the premiums were calculated; (iii) used estimated numbers instead of actual numbers to calculate the premiums; and (iv) failed to authenticate the audits it relied upon for damages, which were created in the course of litigation. These arguments are nonsense.

Wausau was not required to submit full copies of the policies to the Court.  Wausau submitted hundreds of pages from the original policies and referenced all relevant portions.  If anything were missing, the Defendants, which have the policies, should have made up for this deficit in information.

Defendants' conclusory claim that Wausau failed to adequately explain how its premium calculations were calculated does not raise a genuine dispute.  Wausau includes the description and methodology for calculating the premiums and other costs in both the Gauthier May Declaration, and the Gauthier Reply Declaration of September 9, 2013.  These declarations clearly and convincingly show each calculation.  Wausau's audit documents and charts show the incurred losses (from particular workers' compensation claims filed against the Defendants) which Wausau covered.  The declarations show how the rates were applied to payroll. Defendants also do not genuinely dispute the policies' definitions of costs for which insureds are responsible, or the premium formulas (*see* Discussion Section II, *supra*, and fn. 2.)  Instead, Defendants simply assert that "one cannot reconcile or understand the calculations asserted by Wausau as asserted in the affidavit of Mr. Gauthier." (Def.'s Response Mem. 16.)   The one

---

[15] This is essentially a condensed formulation of the elements of a breach of contract claim.

example of allegedly "fuzzy math" that Defendants offer pertains to Total Ratable Losses. Contrary to Defendants' assertion, the reply declaration of Justin Gauthier, Wausau's Senior Receivables Analyst, clearly addresses the definition of the term (it is the sum of the applicable incurred losses and expenses in the loss run columns of each policy), and how it is calculated for each policy. (*See* Gauthier Reply Decl. ¶ 69, citing Gauthier May Decl. at Ex. 9.)

Defendants claim that Wausau's auditor, Joanne Martens, testified that Wausau used calendar year figures in its audits, even though none of the policies were on a calendar year basis. Defendants assert, without any explanation, that this somehow equates to using estimated instead of actual premium bases, and thus actual damages cannot be determined. (Def.'s Response Mem. pp. 5-6.) This is simply not true. As Martens testified, the figures that she used to conduct her audit were actual payroll figures, not estimated figures. (Martens Reply Decl. ¶¶ 19-22.) Allowing Defendants to question data they refused to produce would reward improper behavior. More importantly, the record reflects that Wausau was able to conduct actual audits of the Defendants after the Court ordered the production of Defendants' relevant records on June 16, 2011 and September 15, 2011. (*See* Background Section IV *supra*.) Defendants' conclusory allegations do not raise a genuine dispute that Wausau used actual, not estimated, figures after receiving audited information from the Defendants.

Defendants claim that Wausau failed to authenticate the records it submitted, but do not actually challenge the authenticity of these documents. This is a hyper-technical argument. (*See* Def.'s Response Mem. at 14: "Although 'this defect is rather technical, either an affidavit or sworn testimony averring to the facts required by Rule 803(6) is necessary for admissibility under the Federal Rules.") There is no reason to doubt the authenticity or reliability of the records Wausau produced. The reply declarations of Martens and Gauthier duly authenticate

them.  Furthermore, Defendants authenticated the loss runs, payroll audit worksheets and reports, retrospective invoices, and policies themselves in their discovery responses. (*See* Shyer Reply Decl. ¶¶ 22-33; Ex. 8.)  Defendants also admitted various definitions in the policies (Def.'s Response to Pl.'s Rule 56.1 Stmt. ¶¶ 4, 5, 13, 44-46, 48-49) , the components of the New York Surcharge and total New York policy premium (*Id.* ¶¶ 50-52), the issuance of valuation dates of various invoices and retrospective premium adjustments (*Id.* ¶¶ 18, 19, 28, 29, 79-82, 88-90, 138-139, 149-150, 171), and the formulas for calculating retrospective premium under the 019 Rating Plan (*Id.* ¶¶ 43, 118-119).  Having admitted this information, Defendants cannot in good faith challenge the authenticity of the documents that contain it.

Defendants further argue that the actual audits for the 019 and 010 policies are inadmissible because they were conducted "in the course of litigation."  In this case, unlike the cases that Defendants cite, the fact that the audits were conducted after the commencement of litigation does not make them unreliable.  Martens's Reply Declaration and exhibits clearly show her methodology in conducting the audits.  The only reason the audits were conducted during pendency of litigation was Defendants' refusal to produce their records earlier, as required by the policies.  The Court had to "so order" the production of these records.  This is not a reason to prevent admissibility or the Court's review.  If accepted, Defendants' position would allow an insured to prevent an insurer from collecting premiums by (i) refusing to turn over records for an audit, (ii) forcing the insurer to bring an action to obtain the records, and (iii) then claiming any subsequent audit is inadmissible as "conducted in the course of litigation."  For good reason, this cannot be the law.

Finally, Defendants claim that Wausau does not explain the connection between Liberty and Wausau, and why Liberty's name appears in places on the policies.  This last-ditch argument

24

is entirely baseless. The record reflects that Wausau is a subsidiary of Liberty (*see, e.g.*, Gauthier Aug. Decl. Ex. 2.), and Defendants concede elsewhere that Wausau is part of Liberty. (*see* Schlesinger July Decl. ¶ 5: "Oxford presented a proposal on behalf of Wausau (now Liberty).")

**CONCLUSION**

For the foregoing reasons, the Court grants Plaintiff's motion for summary judgment. The Court denies Defendants' motion for reconsideration of the Court's November 21, 2011 Order, and denies Defendants' cross-motion for summary judgment. Plaintiff is entitled to the following damages. (1) $1,749,327 plus interest from the 018 Policy Defendants, jointly and severally, calculated as follows: $1,498,955 plus 9% interest from October 11, 2010 to the entry of judgment, and $250,372 plus 9% interest from October 6, 2011 to the entry of judgment. (2) $4,121,192 plus interest from the 019 Policy Defendants, jointly and severally, calculated as follows: $1,466,621 plus 9% interest from October 11, 2010 to the entry of judgment, and $2,654,571 plus 9% interest from December 12, 2011 to the entry of judgment. (3) $851,814.80 plus interest from the 010 Policy Defendants, jointly and severally, calculated as follows: $252,950.80 plus 9% interest from September 8, 2010 to the entry of judgment, and $598,864, plus 9% interest from December 12, 2011 to the entry of judgment. The Clerk of Court is directed to enter judgment and close this case.

Dated: New York, New York
      March 28, 2014

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge

25
